IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

AUDIENCEVIEW TICKETING
CORPORATION,

*Plaintiff,*

      v.

PICKLEVILLE PLAYHOUSE, INC.

*Defendant.*

Case No.: _____

**DEMAND FOR JURY TRIAL**

## COMPLAINT

Plaintiff AudienceView Ticketing Corporation ("AudienceView" or "Plaintiff"), by and through its undersigned counsel, brings this Complaint against Defendant Pickleville Playhouse, Inc. ("Pickleville" or "Defendant"), and alleges as follows:

### NATURE OF THE ACTION

1. This action arises from Defendant's breach of its exclusivity and payment obligations under a written five-year ticketing-services agreement, and its subsequent anticipatory repudiation of that agreement.

2. On October 28, 2024, Pickleville executed Order Form No. 00033709 with AudienceView, agreeing to license and exclusively use AudienceView's Professional ticketing solution for a five-year term and to pay the associated Service Fees. Pickleville thereafter breached its exclusivity obligation by using a third-party ticketing provider, failed to pay Service Fees when due, failed to cure despite written notice and opportunity to do so, and ultimately

1

repudiated the agreement by refusing to perform and demanding to "sever all contracts, agreements, and working relationships."

3.      AudienceView brings claims for breach of contract, anticipatory repudiation, and, in the alternative, unjust enrichment, and seeks damages of not less than $137,000, plus contractual late-payment charges, pre- and post-judgment interest, and costs of suit, together with such attorneys' fees as may be recoverable by law or contract.

## THE PARTIES

4.      Plaintiff AudienceView Ticketing Corporation is a corporation organized and existing under the laws of Canada, with its principal place of business at 200 Wellington Street West, 2nd Floor, Toronto, Ontario, Canada M5V 3C7. AudienceView provides enterprise ticketing, fundraising, and marketing software to live-event organizations.

5.      Defendant Pickleville Playhouse, Inc. is a corporation organized and existing under the laws of the State of Utah, with its principal place of business at 2025 S. Bear Lake Blvd., Garden City, Utah 84028. Pickleville operates a live-theater venue that sells tickets to performances and events.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because this action is between a citizen of a State (Utah) and a citizen of a foreign state (Canada), and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      This Court has personal jurisdiction over Defendant, and venue is proper in this District, because Section 8.9 of the Agreement (defined below) provides that the Agreement is governed by the laws of the State of New York and that the parties "irrevocably attorn to the

exclusive jurisdiction of the courts located in New York City, New York." Defendant has consented to personal jurisdiction and venue in this forum. AudienceView is registered to do business in New York.

**FACTUAL ALLEGATIONS**

*A.      The Agreement*

8.      On October 24, 2024, AudienceView issued Order Form No. 00033709 to Pickleville, and AudienceView's Chief Financial Officer, Gord Dyer, executed the Order Form that same date. Pickleville's Operations Manager, Makenzie Kremin, countersigned the Order Form on October 28, 2024 (the "Order Form").

9.      The Order Form, together with the AudienceView Terms and Conditions incorporated therein by hyperlink at https://audienceview.com/legal/terms-and-conditions/ (the "Terms and Conditions," and together with the Order Form, the "Agreement"), sets forth the complete contract between the parties.

10.      Under the Agreement, Pickleville agreed to license and use AudienceView's Professional ticketing solution (the "Services") for an initial term of five (5) years commencing on the date of last signature, October 28, 2024, and continuing through October 27, 2029 (the "Term"). Pickleville agreed to pay a monthly access fee of $200.00 and a per-ticket fee of $0.50 throughout the Term.

11.      Section 1.1 of the Terms and Conditions provides: *"Client will exclusively use the Services for all of its events, unless otherwise set out on the Order Form."* The Order Form does not provide any exception to this exclusivity obligation.

12. Section 2.1 of the Terms and Conditions provides that the Service Fees are "non-cancelable" and "not subject to refund."

13. Section 2.3 of the Terms and Conditions provides for a late-payment charge of 1.50% per month on unpaid amounts.

14. Section 7.2 of the Terms and Conditions permits a party to terminate the Agreement for the other party's material breach if that breach is not cured within thirty (30) days after written notice.

15. Section 7.3 of the Terms and Conditions provides that, if the Agreement is terminated as a result of Client's material breach, Client shall pay the remaining Service Fees for the balance of the Term.

16. Section 8.9 of the Terms and Conditions provides that the Agreement is governed by the laws of the State of New York and that the parties irrevocably attorn to the exclusive jurisdiction of the courts located in New York City, New York.

17. The total contractual value of the Agreement over the Term is not less than $137,000.

### B. Plaintiff's Performance

18. Prior to execution of the Agreement, AudienceView conducted multiple demonstrations of the Services for Pickleville, in which Pickleville's representatives had full opportunity to evaluate the user interface, ticket-selection workflow, text size, and customization options of the Services.

19. Following execution of the Agreement, AudienceView devoted substantial resources to configuring and provisioning a dedicated ticketing environment for Pickleville,

working with Pickleville's personnel on implementation activities and readying the Services for go-live.

20.    AudienceView has performed, or has stood ready, willing, and able to perform, all of its obligations under the Agreement.

## C.    *Defendant's Defaults and Repudiation*

21.    In breach of Section 1.1 of the Terms and Conditions, Pickleville has used a third-party ticketing provider to sell tickets for Pickleville events, rather than exclusively using AudienceView's Services as required by the Agreement.

22.    On April 24, 2025, AudienceView sent Pickleville a written Notice of Breach, identifying the exclusivity breach, reminding Pickleville that the functional attributes of the Services had been demonstrated pre-contract, and offering cure options.

23.    On April 25, 2025, Pickleville, through its Owner Andrea Davis, acknowledged the Notice of Breach and agreed to have Pickleville representatives work with AudienceView to establish a new go-live date.

24.    Pickleville thereafter failed and refused to follow through, did not establish any go-live date, and allowed communication with AudienceView to lapse.

25.    On July 23, 2025, AudienceView sent Pickleville a final notice noting that no go-live date had been confirmed, that communication had ceased, offering the same two cure options, and demanding resolution no later than August 6, 2025.

26.    On July 30, 2025, Pickleville responded, through Andrea Davis, refusing both cure options and demanding instead that the parties "immediately sever all contracts, agreements, and working relationships." Pickleville further stated that, absent a response by August 13, 2025,

it would "consider the contracts terminated," and directed AudienceView not to contact Ms. Kremin. That communication constitutes a clear, unequivocal, and definite repudiation of the Agreement.

27. In its July 30, 2025 correspondence, Pickleville purported to excuse its non-performance on the grounds that the Services display small text, have a confusing ticket-selection process, and offer limited customization. Each of those alleged deficiencies was a fully observable feature of the Services during the pre-contractual demonstrations AudienceView provided to Pickleville and does not constitute a material breach by AudienceView or excuse Pickleville's performance under the Agreement.

28. Pickleville has not paid the Service Fees required under the Agreement and has repudiated its remaining obligations to do so.

### D.    *Damages*

29. As a direct and proximate result of Pickleville's breaches and repudiation, AudienceView has been damaged in an amount of not less than $137,000, representing the total contractual value of the Agreement over the Term, plus accrued and accruing late-payment charges at 1.50% per month pursuant to Section 2.3 of the Terms and Conditions, together with any additional damages, interest, costs, and fees permitted by law or contract.

30. In addition, Pickleville has received the benefit of AudienceView's pre-contractual demonstrations, implementation work, configuration of a dedicated ticketing environment, and reserved capacity, without paying the consideration required by the Agreement.

**COUNT I — BREACH OF CONTRACT**

31.     AudienceView incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

32.     The Agreement is a valid and enforceable contract supported by mutual consideration.

33.     AudienceView has performed, or stood ready, willing, and able to perform, its obligations under the Agreement.

34.     Pickleville breached the Agreement by, among other things, (i) using a third-party ticketing provider in violation of the exclusivity obligation in Section 1.1; and (ii) failing to pay Service Fees when due in violation of Section 2.1.

35.     Pickleville failed to cure its breaches within the thirty-day cure period under Section 7.2 after written notice.

36.     As a direct and proximate result of Pickleville's breaches, AudienceView has been damaged in an amount to be determined at trial, but not less than $137,000, plus contractual late-payment charges, interest, and costs.

## COUNT II — ANTICIPATORY REPUDIATION / BREACH

37.     AudienceView incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

38.     By its July 30, 2025 communication, Pickleville unequivocally, positively, and unconditionally refused to perform its remaining obligations under the Agreement and demanded that all contracts and working relationships between the parties be "immediately severed."

39.     Pickleville's communication constitutes an anticipatory repudiation of the Agreement, entitling AudienceView to treat the Agreement as breached and to pursue all remedies available at law and in equity, including recovery of the remaining Service Fees for the balance of the Term under Section 7.3 of the Terms and Conditions.

40.     As a direct and proximate result of Pickleville's anticipatory repudiation, AudienceView has been damaged in an amount to be determined at trial, but not less than $137,000, plus contractual late-payment charges, interest, and costs.

### COUNT III — UNJUST ENRICHMENT (IN THE ALTERNATIVE)

41.     AudienceView incorporates by reference each of the foregoing paragraphs as if fully set forth herein. This Count is pleaded in the alternative to Counts I and II.

42.     At Pickleville's request, AudienceView conferred substantial benefits on Pickleville, including pre-contractual demonstrations, implementation services, configuration and provisioning of a dedicated ticketing environment, reserved capacity, and the availability of AudienceView's Professional ticketing solution.

43.     Pickleville accepted and retained those benefits with knowledge of their value.

44.     It would be inequitable and unjust for Pickleville to retain those benefits without paying AudienceView the reasonable value thereof.

45.     AudienceView is entitled to recover the reasonable value of the benefits conferred on Pickleville, in an amount to be determined at trial.

### JURY DEMAND

AudienceView demands a trial by jury on all claims and issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff AudienceView Ticketing Corporation respectfully requests that this Court enter judgment in its favor and against Defendant Pickleville Playhouse, Inc., and grant the following relief:

A.      Compensatory damages in an amount to be determined at trial, but not less than $137,000, plus all accrued and accruing Service Fees under the Agreement;

B.      Contractual late-payment charges at the rate of 1.50% per month pursuant to Section 2.3 of the Terms and Conditions;

C.      Pre-judgment and post-judgment interest at the maximum rate permitted by law;

D.      Attorneys' fees and costs of suit, to the extent recoverable by law or contract; and

E.      Such other and further relief as this Court deems just and proper.

Dated: July 24, 2026                    Respectfully submitted,

                                        */s/ Susan M. Sajadi*
                                        Susan M. Sajadi (NY Bar Code # 4438461)
                                        1717 Pennsylvania Avenue, NW
                                        Suite 1025
                                        Washington, DC 20006
                                        Telephone: (917) 238-0990
                                        ssajadi@potomaclaw.com